Ladies and gentlemen, please rise. This court is now in session. You may be seated. The clerk will call the next case. 320-125, people of the state of Illinois, employed by Johnson-Nicolosi v. Carlos Venegas, appellant by Brian Joseph. Mr. Joseph, you may proceed. Good morning. Brian Josias, assistant appellate defender with the Office of the State Appellate Defender on behalf of the defendant appellant. May it please the court and counsel. Carlos Venegas's conviction for criminal sexual assault should be reversed, and the matter remanded for a new trial for multiple reasons. Taken individually or cumulatively, the errors below deny Venegas a fair trial and resulted in his conviction. This court should remand for a new trial. First, the trial court erred when it allowed the state to admit edited portions of a videotaped interview with Venegas's wife, Veronica, that provided the only proof on one of the critical elements, sexual penetration. Now, there's no question that the out-of-court statements that were admitted are hearsay. The statement argues that they were admitted as impeachment evidence, but the record belies that fact. In reply closing argument, the prosecutor specifically referred to the statement not as a means of compounding its attack on Veronica's credibility, but as substantive evidence. The prosecutor argued, quote, again, you had to watch the video in order to get the whole story about it. But she says she touched her, that she was touched in her vagina. That was plainly offered as substantive evidence of the element of the offense in violation of the Illinois Supreme Court's holding in People v. Simpson. Veronica had no knowledge, no personal knowledge of the events at issue, and there were no other exceptions that would have justified the admission as substantive evidence. However, assuming arguendo that the state's correct and that the tape was offered only for impeachment, which again, we would not concede, it still should not have been admitted. Now, it's critical to remember that Veronica testified as a state's witness. While a state's witness may be impeached with prior and consistent testimony, excuse me, prior and consistent statement, it must affirmatively damage the state's case. It cannot be merely disappointing. We cited multiple cases in our opening brief to that effect, and the statement at issue here did not qualify. It did not damage the state's case. Veronica, in her out-of-court statement, excuse me, in her in-court testimony, never denied that Essie told her that Vanegas touched her, and that it's important, touched, quote, touched. She just testified that Essie did not tell her where she had been touched, or precisely how. And the state never ensured that her memory of the situation was exhausted. It never offered to refresh her recollection. And again, she merely testified that she did not recall what she told the detective during the interview. She did not deny that the touching happened, did not deny telling the detective that Essie did not tell her how the touching happened. She merely said she did not recall the substance of that interview. This testimony did not affirmatively harm the prosecution's case. I thought she did testify. I thought her testimony was that Essie did not tell her where the defendant had touched her. Correct. She said that, excuse me, Veronica testified that Essie told her that the defendant had touched her, but that she did not recall where. I believe she said that Essie did not tell her where she touched her. And then they said, well, did you have an interview with the detective? Yes, I did. During that interview, did you tell her, the detective, that Essie told you that she was touched in her vagina? And she said at that point, I don't recall. But again, she did not say Venegas never touched her. She did not say that Venegas did not commit an act of penetration. She merely said that Essie, again, hearsay within hearsay, did not say that she was touched in her vagina. So you're saying that there was no need for this taped interview to be presented, correct? Correct. Okay. Because it didn't go to an element of the offense? Well, I'm not sure I understand. Well, I'm not sure I understand where you're coming from either, because isn't it where the touching occurred is the essential element of the charge here? Correct. That's something the state was required to prove, that the penetration, act of penetration, did occur. And so to the extent that they're trying to offer Veronica's out-of-court statement as substantive evidence of that, again, she can't testify to that. She was not an occurrence witness. She does not have personal knowledge. And so to the extent that they're trying to offer Veronica's out-of-court statement as substantive evidence of that, again, she can't testify to that. So the state is falling back on an argument that this was admitted to impeach her testimony in court, that Essie did not tell her that she was touched in her vagina. And again, there, they're just, under People v. McCarter, which is another case we've cited, if they're trying to impeach their witness when they put that witness on, that witness has to have said, not just, I'm not really sure where the touching happened, because again, she doesn't actually know where it happened. They have to show that she damaged their case in order to impeach her with this out-of-court statement. And again, this testimony, I don't recall, or she simply said... where the defendant touched her. I think initially she does say, that's correct, she didn't tell her where she touched her, that's correct, yes. It's only after they say, didn't you give this interview, that she starts saying the, I don't recall. When they ask her about the details of the interview, she does say, I don't recall, that's correct. Right, which is different than the Blakey case, and different than the other cases when you're going to whether or not it was affirmatively damaged. The Blakey case is a state case, because she's not just saying, I don't remember, I don't remember. She says, she didn't tell you where this happened. Initially, correct, correct. In her testimony, in her initial testimony. Correct. And then when they discuss the statement, that's where she says, oh, I don't recall. Correct. In response to what they're using to impeach her, what the state says is impeachment. Correct. Okay. That's correct. So again, it's our position that this should not qualify as impeachment, because it's not affirmatively damaging the state's case. And again, it's important. It's our position. She's being put on as a state's witness. So that's why this rule that she has to affirmatively damage is so important. Otherwise, the state could put on a witness, get them to say something that's moderately inconsistent, and then use this as a backdoor to bring in all sorts of hearsay. And that's why this is a rigorous requirement that it affirmatively damage the case. And the prejudice from the admission of the statement was plain. As we've discussed already, this provided critical proof of an element of the offense, as the state itself admitted in its response brief. The only other evidence of penetration came from S.E.'s videotaped forensic interview,  and that was contradicted or indeed recanted by her trial testimony. Plainly, S.E.'s story lacked consistency and details, and thus the admission of Veronica's interview, which was taken relatively contemporaneously with the alleged offense, provided critical evidence regarding an element of the offense. And that, again, goes back to whether or not this was being admitted for substantive evidence. Not to mention it helped... So in light of that, to go back to your original argument, in light of that, had Veronica testified, like her original statement, that S.E. told me that he touched her in her vagina, that would have been very helpful to the state, correct? That would be helpful to the state, yes, correct. And when she says S.E. didn't tell her that... But that's not damaging the state. It's not helping the state, but it's not damaging the state to say, I don't recall... No, she didn't say that. She said that's not where S.E. did not tell me that. Correct, but she did not say that S.E. didn't tell me that she was touched. She just said S.E. didn't tell me where she was touched. Which is, the where this touching occurs is the heart of penetration. That's true, correct, correct. But again, it's a question of whether or not she's... It's not, is she not helping the state? It's, is she affirmatively damaging the state? And simply saying, she didn't tell me where the touching occurred, again, because she doesn't actually know where the touching occurred. She's not an occurrence witness. She has no personal knowledge. She wasn't there. She doesn't know what actually happened. All she knows is what she was told. And so when she... The witness who can actually affirmatively damage the state by denying that the touching occurred in a specific spot is S.E. And that is, in fact, what she does. She comes in and she testifies, no, I was not touched there. And so if the state wants to impeach S.E. with her out-of-court statements, that's a totally different matter than attempting to impeach Veronica on a collateral matter. Again, because she doesn't have personal knowledge of the actual incident. And so that's why it's so critical. Because the state is effectively bootstrapping in this out-of-court statement to cover up something that they don't otherwise have. Now, do we have an inconsistent statement on the stand by Veronica with a taped statement? I think there's an argument that it's inconsistent. I think you could also argue that it's not inconsistent, that it's merely... And that's a critical point, is that it's... To say that she wasn't told... Excuse me. To say she didn't tell her where she was touched, and that's why I mentioned before, the state didn't offer her an opportunity to refresh her recollection or to correct her statement a little bit more clearly. They simply said, you know, did you... They referred to the tape, but they didn't really give her the opportunity to correct herself and to say, oh, in fact, I did say that. She just said, at that point, I don't recall. And again, that's why it's not incredibly inconsistent. Because if they had shown her, for example, a transcript, you know, you spoke to her, you said this, did you not? They didn't do that. They just merely said, did you say this? I don't remember, and then they moved on. And that... I would like to move on. The error was further compounded when the state refused Venegas's request to introduce the balance of Veronica's statements at that out-of-court statement. And the state has attempted to downplay the significance of the balance of that video, but it not only doesn't apply to the state in its argument and its standards, but it's also factually incorrect. The rules of evidence are clear. The question is whether the unplayed statement ought, in fairness, to have been considered contemporaneously with the introduction of this edited portion where she refers to whether or not Bessie told her. And it's entirely fair to have required to play the balance of the tapes for two primary reasons. The first is that it provides context for the edited clips and shows that Veronica, again, didn't have extensive knowledge of S.E.'s allegations. And this was obviously a highly charged and emotional situation that would have properly framed what her knowledge was of the touching incident. And two, it would rebut the state's attack on Veronica's overall credibility and its insinuation that she pressured S.E. to change her story out of self-interest and loyalty to Venegas. And finally, on this point, these are also intertwined with defense counsel's ineffective and woefully inadequate representation. It goes without saying that counsel's trial performance here demonstrated a failure to understand basic evidentiary rules concerning the admissibility of out-of-court statements like Veronica's. And as we can see here, it was critical in this case to understand the admissibility of out-of-court statements given S.E.'s recantation in the Supreme Court. The state's primary, almost the lion's share of the state's evidence regarding Mr. Venegas' guilt came from out-of-court statements. And so having trial counsel who plainly didn't understand how impeachment worked, who plainly didn't understand the admissibility of hearsay, just absolutely kneecapped Mr. Venegas' defense from the outset. And to the extent Veronica's statement was properly admissible as impeachment, a proper limiting instruction for how to weigh out-of-court statements admitted for non-hearsay purposes such as impeachment evidence. And that's an area that the state conceded in its reply brief it was erroneous to not construct the jury on that. Thus, the only question is whether the failure to request that instruction prejudiced Venegas. And as explained above and in our reply brief, out-of-court statements are an area of limiting instruction. And I see I'm already short on time, so I will try to briefly wrap up. And again, the trial courts, in our brief, we've obviously addressed the trial court's erroneous decision as well to grant the state's motion to disqualify Venegas' initial counsel, which deprived him of his constitutional right to counsel of his choice and effective counsel and a fair trial, relegating him to a rushed trial with an unprepared and ineffective attorney. This court should remedy this mistake by reversing Venegas' conviction and remanding for a new fair trial with the benefit of competent and prepared counsel. If there's no further questions, we'll rely on the arguments presented in the briefs, which demonstrate that the numerous errors below deprived Mr. Venegas of a fair trial and allowed the state to overcome  Accordingly, this court should reverse Mr. Venegas' conviction and remand for a new trial. Thank you. I assume you will have five minutes in rebuttal. Thank you very much. I appreciate that. Mr. Nicolosi, you may proceed. Good morning, Your Honors. May it please the court and counsel. Your Honors, I'm going to make various points today and I'm going to kind of tether all of them back to the strength of this case because I think the overriding theme of my brief and my argument today is that even if perhaps things weren't done 100% properly below, that the strength of the clearly admissible evidence in this case was overwhelming of defendant's guilt and that's why this court should not remand for a new trial. Starting with issue one, as my colleague did there, the state, I'm standing on my portion of my brief where I argue that this issue was forfeited. Defense counsel did not complain about the admission of the videotape, of Veronica's videotape and his post-trial motion. Therefore, we're standing by the argument that this issue has been forfeited and the issues of plain error and ineffective assistance to counsel regarding these points were not raised in the brief on appeal so the state's pointing out that it still believes that these issues are forfeited. Moving on, counsel argued that Veronica's video was not admitted as, or was admitted as substantive evidence. The state submits the record strongly or reflects otherwise. The state clearly moved to admit portions of Veronica's video for impeachment purposes. There was lots of back and forth between the judge and defense counsel about whether or not this was proper impeachment and the like. The state never moved to have these statements admitted under 115-10.1 as substantive evidence so the state submits that the record is clear that they were admitted for impeachment. Counsel was referring to a specific comment by the prosecutor in rebuttal argument as evidence that the state was arguing that this was substantive evidence. That statement that counsel said was you had to watch the entire video in order to get the whole story, watch the video in order to get the whole story about it but she says, the defendant touched her, that she was touched in her vagina. The state argued my brief and submits that the she in that statement but she says he touched her, that's referring to SE and referring to SE's video. SE's video to CAC? Yes, with Andrea Fox. Yes. Suggesting that she made a statement that she was touched in the vagina in that video? SE, yes. SE suggested that, or she didn't suggest, she stated that she was touched in her vagina or that defendant played with her vagina I believe is the language that she used in her video. The word vagina. Now you're making me question. Counsel, I don't want to. I believe so. I do have my brief here. I'm almost positive. Now you're getting a second guess. It's easy to get me to second guess myself up here. I apologize. No, no, no. That's your job. I watched it last night and I didn't catch that. If it was there. Give me one second. I apologize. Okay, well, maybe she didn't, I don't have any quotes that she used the word vagina. She said that out of nowhere defendant started playing with her quote down low. And then she said again that defendant was quote playing with it. And she referred to her vagina. I don't know for sure if she used the word vagina. I guess I just, I think the reasonable assumption to be made is that she was talking about playing with her vagina. She did say in her interview that the defendant touched her under her clothes. So I think we can put two and two together and conclude that that's what S.E. was talking about. But he's charged with criminal sexual assault, right? Yes. And not abuse. No. Both. Correct. I don't know the answer to that either. I know he was convicted of sexual assault. So I know that. Much more difficult job, isn't it? Sure. Yes, Ron. But the state submits that there was significant evidence of penetration I point to, I want to point to the text of the defendant, the text between Veronica and defendant. As I argue pretty extensively in my brief, that was pretty strong evidence in this case. There was a particular exchange between Veronica and defendant. What was the strength of that evidence? Of the text between Veronica. Yeah, you said it's pretty strong. It's extremely strong because defendant never denies any of the allegations. He basically admits when Veronica is confronting him with these allegations when they first happen, he basically keeps saying sorry, you have a right to be mad. I wish this was all a misunderstanding. He said all of these things. The state submits that's certainly evidence of defendant's guilt. It is? Yes, Your Honor. I believe it is. But I think that there was a discussion in that text conversation about penetration. Veronica asks him or says to him that M.E., the sister of S.E. had mentioned that S.E. had said that there was penetration. To that response, he said, I wish this was all a misunderstanding. Again, in S.E.'s... And that's an admission of those... I wouldn't say it's an admission. It's evidence. Specific things that are presented to him? No, Your Honor. I wouldn't call it an admission, but I certainly think it's evidence. It's not proof, but I would think it's evidence. Again, in S.E.'s, as I was discussing with Justice Hedl, the video of S.E.'s interview, the state would submit that she's talking about playing with her down low. Again, I think that's reasonable to conclude that we're talking that she's clearly talking about her vagina. So I think there is significant evidence. Again, the defendant did not raise the issue of challenging the sufficiency of the evidence here. For assault, you have to have penetration, correct? Yes, Your Honor. What do you have to have for abuse? I believe you... I believe it's just touching. I don't have the statute in front of me, but I believe it's just sexual contact that's, I guess, probably short of penetration. But again, we're talking about sexual assault in this case, Your Honor. And again, the defendant... That has to be proven beyond a reasonable doubt. Yes, Your Honor. But again, the defendant did not raise an issue of the sufficiency of the evidence in this case. We're talking about impeachment evidence here in Issue 1, certainly. And the state submits that not only was this properly admitted for impeachment, the state did not go farther than that in its argument, arguing about it having substantive impact. And again, as I said at the top of my argument, that I think I always have to tether back to the strength of the evidence. I think Essie's video is strong evidence that this assault occurred. Essie's testimony, of course, she retracted. The whole family basically went up on the stand and kind of took back or said nothing happened. The bulk of the evidence here was in the text exchange between the defendant and Veronica, and Essie's videotaped interview. And other things found on the defendant's phone as well. Shortly after the allegations were unearthed, he googled how long, what length of a prison sentence does a man get for being with a minor. The state submits that's pretty strong. Consciousness to guilt. Again, during this text exchange, which was admitted, not challenged whatsoever. The defendant, Veronica texted the defendant, why did you do this? And he said, I don't know. And all the other quotes that I had laid out earlier. The defendant, there's certainly evidence that the defendant did not back away from these allegations. And then, as that text exchange evolved, as I argued in my brief, it's clear that the family tries to change the narrative in this story. That they talk about how do we, at some point, a couple days later, Veronica says to the defendant she wants him back after she kicked him out of the house after these allegations. She said, we want you back. How do we do this? We have to ease her back into the family. Maybe we can get her a horse. Things like this. The family clearly has this narrative that they want to keep the defendant around because, as M.E. and S.E. stated, their lifestyle would have changed considerably for the worse if the defendant went to jail for this. So clearly there is a, that family narrative explains why S.E. retracted her statements on the stand, her initial allegations. But the state submits, there's just, we can't ignore everything that happened before the retraction. This case, S.E. went in front of Andrea Fox in her interview and she said everything that happened and she was visibly uncomfortable. It was as quick to anybody watching that video when she got into talking about what the defendant did under her clothes. It's as clear as day that she, the state submits that she had, it's obvious she was telling the truth in that interview and that her testimony was inaccurate and she essentially lied on the stand. So the state submits, again, we're talking about this interview, this videotaped interview. The state submits that it just, it paled in comparison to the strength of the other evidence that was presented regarding the defendant's second issue about whether or not the defense should have been allowed to present the balance of the interviews of Veronica and Emmy. I stand by my brief saying that there's almost nothing in those, the rest of the videotapes that's really of any importance whatsoever. I believe in my brief I rebutted every reason the defendant argues that those should have been showed in their entirety, such as that the defendant argued that the rest of Veronica's video showed that she didn't pressure Essie to change her mind. There's nothing in that video that either way says that she pressured or didn't pressure. Every argument that I make in my brief just points to the fact that there was nothing of any substance in these videos that would have had any impact on any jury, especially given, again, Essie's interview, her videotape, which is very strong evidence, and then the text exchange between the defendant and Veronica, which the state still submits as very strong evidence of what happened in this case. With that, I believe I'm going to rest on my brief for the issues in Issues 3 and 4. For the most part, I believe that any issue regarding defense counsel's ineffectiveness at trial, even though, yes, the state admits that there should have been a limiting instruction, given, again, the state believes the evidence in this case was much too strong to be derailed by the lack of a limiting instruction in this case, and the counsel, the defendant did not prove that counsel was ineffective in this case. So with that, the state would request that this court affirm the defendant's conviction and sentences, and if there's any questions, I'd be happy to answer them. I don't see any questions. Mr. Infelosi, thank you. Thank you, counsel. Mr. Zais? Thank you, Your Honors. Briefly, if I may. As an initial matter to Justice Holdren's question, the defendant was charged with criminal sexual abuse and criminal sexual assault in this matter. Now, the state's argument, as my opposing counsel mentioned, he tethers his entire presentation to the strength of the evidence, and I think one of the things that we've come across most strongly, and I've tried to have, is that the critical question when we're dealing with a criminal sexual assault case is sexual penetration, and on that point, the state talks a lot about the text messages and about S.E.'s interview, but in none of those places, either in the interview or in any of those text messages, is there evidence of sexual penetration. During S.E.'s interview, she was specifically asked, because again, she was a relatively unsophisticated minor, and she was asked where she was touched, and the interviewer, to try to help her with the terminology and to help her with the anatomy, says, were you touched where you put a tampon in? And she said, no. She said that he played with, I think she says, with the C word, but she doesn't know what that means. She doesn't know what the C word is, and so she never says that he placed his finger inside her or where exactly it went, even in the interview, and so the only other evidence of penetration, per se, is again, Veronica's out-of-court statement where she says that S.E., at some point in time, said that he put his finger in her vagina. Counselor? Yes. The text message that's cited by the prosecution is later on December 29th, Veronica told defendant that S.E. told M.E. that there had been penetration, and Veronica asked defendant, why did you do this? The defendant responded, I don't know. Correct. Correct. So that would be other evidence I assume. Again, I think that's certainly some evidence of guilt or of perhaps inappropriate conduct, but I think that the admission of the text messages, there's numerous interpretations that could be offered for those text messages, and it's important to remember that text messages are asynchronous communication, and again, they're out-of-court statements, and as the state cited in its brief, these were offered without objection, and again, to the extent that we've raised ineffective assistance to counsel, that sweeping dealing, failure to deal with the proper admissibility of out-of-court statements, these text messages came in unchallenged, without any kind of... Well, this particular one, counsel, appears to be an admission. At least it can be argued it's an admission, at least the jury can determine whether or not it's an admission. It could be argued that it's an admission, and that is correct, but again, when you consider that in the context of S.C. coming in and denying that this took place, and the testimony that was offered at trial, that this was also a parallel discussion regarding infidelity, you could say that there are, again, multiple interpretations. That's why, I think at this point in time, we're not challenging the sufficiency of the evidence, but merely saying that in a case that the evidence here was close enough that the numerous errors from counsel and the other evidentiary errors require this to go back for a new trial where these types of things are dealt with correctly. On both counts? On both counts, yes. Yes, that's correct. And so, you know, again, I think that these types of out of court statements and just the utter failure of counsel to deal with them correctly requires, in fairness, a new trial where evidence can be handled correctly. And I see I'm relatively close on time, so if there's no further questions, we would rest on our briefs. Thank you very much for your time. I just had one more. Regarding the original counsel, I tend to agree with you regarding some of the conversations and comments that took place  of that discussion, but at the end, it seems as if he's acquiesced to his leaving the case, and he's almost asking for the judge to rule that way. Do you disagree with that? I think that it's somewhat challenging to say specifically. I don't think at any point in time that he specifically concedes. It's entirely possible to evaluate the way counsel discloses the information regarding the contact between his secretary and one of the witnesses as more of a in all fairness and full disclosure, I'd like to make sure that this is put out there on the table, that there has been this contact as well. I don't see an explicit concession. I see that he sees the way the wind is blowing and is simply saying, here's all the information. It's obvious the way the judge has already decided he's going to rule and he's putting it out there on the table. I don't think he ever said, you're right, I have to withdraw. I would also point out that there are cases where counsel, and I believe it's, sorry, I wanted to cite it because I looked it up fairly recently, it's an Illinois Supreme Court case from very recently, I think it's Soto, where the defense counsel had actually moved to withdraw and then that was not granted and the Illinois Supreme Court I believe said that even in that case there was not a per se conflict and if you'd like, I could submit a supplemental briefing if you'd like on that, but that even when a counsel has moved to withdraw and cited their own withdrawal or their own conflict, it's not a per se conflict if they don't need to prove it. Thank you, Your Honor. I appreciate it. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And with that, we'll take a brief recess for our panel.